Good morning, Your Honors. May it please the Court, Nathan Schnetzler on behalf of the appellants Arlethea Pack and Armor Correctional Health Services. Your Honor, as is laid out in the briefs, the critical issue in this case for this Court to determine is whether or not under Virginia law, in a medical negligence case, there was sufficient evidence for the jury to find that Nurse Pack approximately caused injury or the death of the decedent, Mr. Boley, who was an inmate at Deerfield Correctional Center at the time of his death. Counsel, isn't the first issue whether we look at this for sufficiency of evidence or for no evidence based on whether or not your 50A motions forfeited this issue? That is an issue that has been raised, Your Honor, by the appellees and the District Court raised it as well. Obviously, we disagree on that both with the District Court's analysis and with the appellee with respect to whether or not there was actual forfeiture in this case. The reason being, Your Honor, is that with respect to Rule 50A, when the motion is made at trial, I think the Court, the Fourth Circuit specifically, has said that the rules of civil procedure need to be interpreted broadly and liberally. I think it is incredibly important in this context, Rule 50A, as trial counsel is trying to make an argument with respect to a motion for judgment or directed verdict, that the Court grants leeway when that motion is refiled as a Rule 50B motion. The reason being is that those arguments are made in the heat of trial, oftentimes not with the sufficient opportunity to prepare those arguments or with the benefit of a transcript. So looking at that issue with respect to whether or not there even was forfeiture in this case, our argument, Your Honor, plainly looks to whether or not the opposing party had noticed really an opportunity to respond. I appreciate the liberal construction. I think that's fair and I appreciate the intensity of being in trial. I think all that is fair. But in reading the 50A motions, really both of them, there were two, both of them seem to totally piggyback on Dr. Harris's motions about the contingencies of what could happen at the ER. Not once that I saw was there a motion that was peculiar to Nurse Peck. There was nothing about the need for expert testimony to Nurse Peck or about how she specifically, her violation of the standard of care didn't cause. Now maybe we could say any mention of causation encompasses anything of causation. That's not just liberal. That's pretty wide open. I agree, Judge Quattlebaum. But in that sense, the issue of causation, obviously a critical element, and particularly in a medical negligence case. Right. Where I would point the court to with respect to the record is trial counsel did reference causation multiple times with respect to all counts and with respect to both defendants, Dr. Harris and Nurse Peck. Armour was just a defendant for purposes of responding to superior. But with respect to the arguments that were made by trial counsel, he was clear that he was making a broader motion with respect to causation. He talked about the speculative nature that Boley would have lived, which is important because that goes to the issue under Virginia law as whether or not the breach of the standard of care, when you're talking about proximate cause in a medical negligence case, one of the issues the court has to consider is whether that breach, in order to reach the proximate cause prong, affected the substantial probability of survival of the decedent. And that is where I think it is critical. But your argument in the 50B motion and to us is that there was no expert testimony about causation as to Nurse Peck. There, of course, was expert testimony about causation as it applied to Dr. Harris. The jury apparently found it persuasive, that evidence. They found for Dr. Harris, so they considered those arguments and things. But anyway, I don't want to beat a dead horse, but the arguments you're making now about causation seem to be of a distinct character from the ones that were made at trial. And I don't think that means you can't go forward. It just means you have a no evidence standard versus a sufficiency standard. Right, Your Honor. And as the appellees have conceded, even if the court were to find that the district court was correct that there was forfeiture, the court could review it under a plain error standard and determine whether or not, from our position, that would then turn on to whether or not there was manifest injustice, based on the lack of any evidence with respect to that proximate cause prong as to Nurse Peck in this case. And again, Your Honor, with respect to the standard of review that this panel needs to apply here, I think it's important to note that the appellee was certainly on notice that causation was part of those Rule 50A motions. It's an essential element of the claim. And therefore, there was an opportunity to respond to those arguments at trial. There was an opportunity to respond to those arguments at the Rule 50B stage. And I think it's important also, perhaps not as important with respect to what was actually presented to the trial court at trial, but the fact that the trial court essentially went ahead and did a full review rather than just saying, no, you forfeited this argument, I'm not going to consider it, I think is also persuasive that this court should consider a de novo review as well and should apply that standard to determine whether or not there was evidence on that proximate cause. But at the trial, the nurse and the doctor had the same lawyer. That's correct, Your Honor. So you couldn't argue that there was an intervening negligence on the doctor's part. Correct, Your Honor. That was a problem, though. I mean, see, you had different interests, didn't you? Well, you want to use it now that he's been acquitted. You want to now say, well, the intervening cause was the doctor. No, Your Honor, we're not making a superseding intervening cause argument. Are you not? We are not making that argument. I think we've been very clear both with the district court and in our briefs in this case. The argument is not superseding intervening cause with respect to either the other nurse that saw Mr. Boley and provided treatment. I'm not talking about the other nurse. I'm talking about the doctor. Yes, Your Honor. And so our argument is not with respect to either of those two medical professionals that were providing treatment to Mr. Boley over the next several hours of the evening. Our argument is that the court can consider that because the evidence in the case from the plaintiff's side of the case was that the standard of care for the physician was to send Mr. Boley to the ED, to the emergency department, you know, upon hearing about these complaints of chest pains, of the worst chest pain of his life. And the plaintiff's evidence was that the failure to do that was a breach of the standard of care and that that was the proximate cause of Mr. Boley's demise. But the jury rejected that. So we're not arguing that there was a superseding intervening cause. What we're arguing is that the court can consider, to the extent that it even thinks that there was sufficient evidence on the proximate cause prong to go to the jury, the jury rejected that theory by finding in favor of Dr. Harris. And so by finding that there was no proximate cause with respect to Dr. Harris, it really makes no sense that a jury could find that the nurse, the LPN, Ms. Peck, that even if it did find there was a breach of the standard of care, that that breach could approximately cause Mr. Boley's death. I understand the nuance of the argument. You really have to sort of sit down and wrestle with the issues. But if the jury rejects that the proximate cause of the death was the failure, if the jury doesn't believe the plaintiff's argument that the proximate cause of the death was the failure to get him to the emergency department, they reject that theory. We don't know what they rejected. Maybe we do. Maybe there's a specific verdict. But if it just says I find some, I should know this and maybe it's in the record, but if it doesn't say causation, they may have said no breach of a duty. It may not have gotten the causation. Actually the verdict form is in the joint appendix. Does it say causation? It says do you find that Dr. Harris was negligent? And that was it. But the jury instructions, which are also included in the joint appendix, were clear about what the elements were and what needed to be proven with respect to the negligence. But you can't say that the jury relied on your causation arguments to Dr. Harris if the basis of their decision was he wasn't negligent in the first place. I think it cuts both ways, Judge. Because if it's just a simple verdict of Dr. Harris was not negligent, we have to determine what are the elements of the claim here. You had to either have a breach of the standard of care along with proximate cause. And so they could have found there was no breach of the standard of care. And it's the same argument with respect to Nurse Peck. If there was no breach of the standard of care by Dr. Harris of not sending Mr. Boley, then how can there be a finding as to Nurse Peck? And that's where this argument really, like you have to sort of drill down into what the jury did in this case and why we're not arguing that this is a superseding intervening cause. The argument is more drilled towards what, and I would point the court to the Jenkins v. Payne case from the Supreme Court of Virginia, and it's in a footnote, but it notes that there's no problem with defense counsel pointing to another medical provider's actions. The issue in that case is whether that defendant could say that the other medical providers were negligent. And the court was not going to allow that. But there was nothing wrong with the defendant in the Jenkins v. Payne case referencing the other treatment that was involved. And I think that that's where we have to consider this case, falling along those lines. And it actually goes, I think, an even step further than all these cases that we've cited in the briefs in that we have this nuance that really is a distinct issue that you have Nurse Peck, who is alleged to have apparently one encounter with Mr. Boley, and then you have subsequent treatment by medical providers that a jury found were not negligent. And so that, to me, should give the court pause for concern when a jury's finding that the physician was not negligent for failing to send him out. I think I get your argument, and there's some appeal of it to me in this sense. Obviously, before settlements, there were claims against all these nurses. And after settlements, lawyers do what they do. They kind of recalibrate and have a trial strategy. And the testimony of Dr. Bethea is very clear, I think, that just the information about chest pain, blood pressure and pulse was enough to send, to cause Dr. Harris to have to send the patient to the hospital. Really completely disavows anything that Nurse Hayes might have done inadequately. So it seems then for Nurse Peck to have caused this, there would have to be expert testimony that Nurse Peck would have provided different or more information, and I don't think there was any. So that's sympathetic to me. But the hard thing, though, and Judge Gregory alluded to this before, is it looks like the trial strategy was to link Nurse Peck to Dr. Harris and not make any arguments really specific to Nurse Peck. And then once a verdict that was probably unexpected comes out, you're making arguments that the district court never really had a chance, at least into the 50B motion, to consider. So maybe there's no evidence, but it's kind of tough to do that for the first time after it looks like your strategy is we're just going to piggyback Nurse Peck onto Dr. Harris. And to circle back on that standard of review issue, Judge, I think it's important that trial counsel did ask the district court if the district court had additional questions about the causation issue. And that colloquy during the first Rule 50A motion at the close of plaintiff's evidence is critical, I think, because, again, if the intent of the rule is to provide notice to the opposing party, and of course the trial judge to address the heart of the argument. But what he did, I don't mean to cut you off, but he did say that, and I'm not suggesting you're being misleading or anything, but before he said that, he said, you know, I referred to causation earlier. And if you go back to what his first 50A motion was, again, it was all about what might have happened or not happened in the emergency room, which was basically a Dr. Harris issue, and it wasn't this issue of expert testimony. So, I mean, you know, asking the district court, do you have any questions about causation, I mean, that's a bit, I mean, I'm not sure you're putting everyone on notice that you have this theory that you haven't articulated yet. I think, Your Honor, that trying to get that issue fleshed out with the judge, that the judge is clear as to what your argument is, is important, and I think trial counsel tried to do that. I know opposing counsel at trial in response to defense counsel saying, I don't think that the plaintiff addressed causation in their opposition to the first Rule 50A motion. Plaintiff's counsel offered to address it with respect to the trial judge. I think there would have been further opportunity to develop that issue, but it wasn't, and I think trial counsel, to his credit, was trying to make a Rule 50A motion on behalf of two defendants on, I believe it was three separate claims that were still pending, in a very tight timeline. I see I've run out of time. But, again, isn't that the risk you take when you decide to represent all three defendants like that? Because it's like in the criminal cases, you know, when you have people, witnesses and those kind of things, and you have to have separate counsel because there may be a conflict. Because you had no interest in doing anything in the trial, right, to point to the nurse separately that, well, she didn't do anything because she couldn't have been, because whatever she did in the late, a physician saw him, and that would cut off any causation, right? You were happy with that, right? I think that, I was not trial counsel, but I believe that was sort of the, I know I'm over if I may respond. Yeah, but isn't that right? That's what you really want to do, and now you want to come and say, wait a minute, now that he's clear, now we can then say, well, she couldn't be negligent because he took care of all of that. Now, basically you're saying it's an inconsistent verdict? It is an inconsistent verdict. It is. That's the problem. You're telling me that because he, they found a general verdict of not guilty based on, a lack of negligence, she as a matter of law couldn't be also negligent? Based on the testimony that was, that came from the plaintiff's case, Your Honor, because if you look at the standard of care with respect to Nurse Peck, Nurse Roscoe was very clear what the standard of care required, and there were four things that Nurse Peck should have done according to Nurse Roscoe. It was ask questions about the chest pain and the patient's medical history, obtain the patient's vital signs, conduct a physical exam, and then report that to whoever the supervisor may have been, whether it was an RN or whether it was Dr. Harris or somebody else. That information should be reported. There was no testimony that Nurse Peck had any duty or that was within her standard of care to make an independent decision to send Mr. Bowley out of the facility to the emergency department. But then you should have just a motion to strike. Basically there was no evidence against her at all. There was evidence that there was a breach of the standard. There was evidence. Yes, Your Honor. It was. She didn't seem. Judge Graber makes a point I hadn't thought about, and you mentioned it, the inconsistent verdict. Did you make an inconsistent verdict motion? Not you. Did trial counsel make an inconsistent verdict issue? There was no motion. So there's no, I mean, we have a, you know, there's a debate about whether you made an appropriate 50A motion. There's no inconsistent verdict motion, and so all this kind of comes at the end. Okay. So jurors are reluctant to bring back a big verdict against doctors. That's a known factor. And so, but they were outraged at what happened. And so the nurse got hit with the verdict. I think that's what happened, Your Honor. I think that there was, you know, to speculate what happened in that jury room was that there was some anger directed at Nurse Peck. And as Your Honor mentioned, Judge Worrell, that there may have been reticence to find against the physician in that context. But the jury's, it's the court's obligation to determine whether that jury verdict is in accordance with the law. And for the reasons I've stated, I would ask that the court reverse it. But you would say, I know your first argument is that there's insufficient evidence, but you would also say there's plain error because there's no admissible evidence at all about how Nurse Peck caused Mr. Bowley's injuries and death? Correct, Your Honor, because it is an essential element, we think, that it would even fall under a plain error standard review of warrant reversal. All right. Thank you.  Mr. Zemel. Good morning, Your Honors. My name is Danny Zemel, and I am here on behalf of the appellee, James Bowley. I'd like to start with three things I'd like to go through that were mainly discussed here on the Rule 50 motion for judgment of a matter of law, and that would be the waiver, the idea of an inconsistent verdict, and the fact that our argument for why this was not any error, certainly not plain error. What kind of custody was your decedent in? He was an inmate at the Deerfield Correctional Center. Which is a state facility? State facility, yes, Your Honor. Department of Corrections for the Virginia State Facility. So I'd like to say quickly on waiver that all parties were well aware of what the causation argument was here and as to what Armour's counsel at the trial's argument about Nurse Peck was. In his opening argument, he stated, I haven't said much about Nurse Peck, and that's because it's our position that she never saw Mr. Bowley on April 16th and that she certainly did not disregard any complaints of serious and obvious chest pain. And that continued throughout the trial. Her defense was entirely about liability, but she did not see him at all, or if she did, he did not say anything about chest pains. And so I think the idea that there was any specific proximate cause argument was not brought up. And it is true that causation was said many times, but again, as I think Judge Qualdebaum noted, there was a specific pretrial causation motion filed by Armour about, as the district court judge put in his motion, the granularity or specificity needed about what specific people at the ER would have done. That was argued in pretrial, in the directs and the crosses of all the experts through Armour, and then through the Rule 58 motion. All parties knew what causation meant in this standard. How long did the trial take? It was five days in total, Your Honor. The first day was mostly Valdia. It was a five-day trial through which the district court saw all this. Also, this beforehand, this had been a long case that had been going on. We had motions to dismiss, extra motions, and motions for summary judgment as well. These arguments were well known, and this argument had never been raised prior to this. So, counsel, let's go with, for the sake of discussion, that you're right that it was forfeited. And in talking with your colleague, as I understand it, then the question is, was there plain error, which is under, I think, the Bristol-Myers or some case says, no evidence. So you still have to, I think, point to some evidence that Nurse Peck caused these injuries, even if it's forfeited. Yes, Your Honor. Do you agree with that? Yes, Your Honor. And, I'm sorry. I just wanted to quickly add, under our position, it was waived, not forfeited. Okay. But yes. All right. But if it's waived, is it still the same point that it's plain error, no evidence? Yes, Your Honor. Okay. Do you agree that no expert said Nurse Peck's failure to adhere to the standard of care caused Boley's death? I agree, Your Honor, that no individual expert made that statement. However, that is not the standard here. The jury is allowed to connect the testimony of multiple experts. And so we had an expert state that had Nurse Peck complied with the standard of care, she would have done the four things the opposing counsel discussed. A doctor in that situation, hearing from her, would have referred him to the hospital, and he would have, to a reasonable degree of medical probability, would have been able to be saved. What's the lull that you can, well, is that right? I know Nurse Roscoe said that Peck violated the standard of care by not doing those four things. That's right. And what expert said that had Nurse Peck done those four things, a doctor would have referred? Again, we're not looking specifically at Nurse Peck. We're looking at whether, so had a nurse compliant, an LPN complying with the standard of care in that instance, called a doctor, as Dr. Bethea testified, a doctor receiving the information that our testimony put on an LPN in that situation would have held the chest complaints, the low blood pressure, and those things would have, under a reasonable standard of care, had to send him out of the hospital. But Dr. Harris didn't. Yes, Your Honor, and that's my next point there is first on the, two things on that. One, again, the inconsistent verdict error has never been brought up in this instance. And, Your Honor, I was having trouble finding four-circuit precedent on this, but in many other circuits there isn't an idea of an inconsistent civil jury verdict. The exact issue you were looking at is under a Rule 50A motion, a party is almost never going to interpret or look ahead to make a motion based on, well, if the jury comes back for one of my clients and not the other, or an inconsistent verdict, that that would then kind of backtrack to the evidence wasn't put on. The point we're looking at here is whether evidence was put on, any evidence of this standard, that Nurse Peck was a proximate cause. But even if we are going to look at Dr. Harris as a kind of stand-in, reasonable doctor, he was not qualified an expert. But even if we are going to look at that, there is certainly evidence in the record for a jury to have found that his failure for negligence was not because he complied, was not because the standard of care was wrong, the plaintiff put forward, but because Nurse Hayes, another nurse here, acted negligently in providing him with false information. He testified that the information... But you disavowed that. I mean, Dr. Bethea didn't even suggest that at all. I know you had disclosures that allowed you to do that and made good sense. You settled with her. But Dr. Bethea said if you get the information about chest pain, blood pressure, and pulse, it's all over. Send him to the ER. I think you, maybe you, and I'm not criticizing this at all, the question was what about the answers or the questions to Nurse Hayes and the answers she gave. Doesn't matter. Send him. It's just that basic information. So there was no evidence put forward by anyone that Nurse Hayes was negligent at all. Well, Your Honor, again, I have two answers to that. One would be that... You couldn't have. You settled with her. I mean, if you had put forth evidence that Nurse Hayes was negligent, that would have killed your case against Dr. Harris. I mean, so you made the right strategy call, but you can't say they would have found their negligence when you didn't put forth any testimony of that and you kind of abandoned it for good strategic reasons. Well, I have two answers to that, Your Honor. One of the reasons we didn't put it on is because this issue was not raised before. Had this issue been properly raised at a Rule 50A motion, we would have been on notice of the ability to put this on. So I think a lack of the record in that instance is exactly the reason why Rule 50A exists in this context, is that we have the ability to correct any of those alleged errors. And secondly, the... But you would have then had to decide, and I want to get your second on it, you would have then said, okay, there's no expert testimony as to Nurse Peck. I'm going to now put some evidence on that Nurse Hayes was negligent. When you still had a claim against Dr. Harris, which would... I mean, come on, you wouldn't have done that. Well, Your Honor, again, that would have been our choice. But again, there's two reasons. One, I disagree with the idea that we had no evidence against Nurse Peck. Going back to that issue, it would be improper for Nurse Roscoe, and her, Dr. Roscoe, she has a Ph.D. but is not a doctor of emergency medicine, she's not allowed to opine on causation. She is not qualified to opine on whether or not he'd be safe. And similarly, our causation experts are not qualified to opine on what an LPN standard of care is. This is classic in medical malpractice claims that this kind of causal chain is allowed. And especially when we're looking here for Dr. Buffay's testimony, there was no requirement that the jury have accepted everything Dr. Buffay had said. Again, we're looking here, even under the most beneficial standard then that they hadn't waived, we're looking at a reasonable jury could have drawn these conclusions. A reasonable jury can believe Dr. Buffay partially. A reasonable jury can say that he was being too strict, that it was appropriate for, based on their expert report, it was appropriate for him to order more testing. And maybe the jury found somewhere between the two of those. The point is that we're not, the idea that the jury is bound to only accept everything the plaintiff said or not is not how we look at jury reports. Can I follow up on that? Yes, Your Honor. It wasn't in the record, but I was just curious. And so I did look at the expert reports from the district court. And the reports talk about how Buffay would testify that the defendants, plural, caused the injuries. But at the trial, the only testimony he gave was that Dr. Harris caused the injuries. Again, Your Honor, it's our position that under Virginia law or under any medical practice or negligence law, I know he does not have to use her name. He said that he connected part of the chain that what she did cause his death. Well, what's the JA site that Dr. Buffay or any expert said that from which you say there's evidence that that includes nurse tax negligence? Yes, so Dr. Buffay at JA 781 and 815. Could you be able to say that? Sorry, JA 781 and 815 as examples. But throughout his testimony, he said that, and I'm paraphrasing here from those two, the standard of care required the doctor hearing that Mr. Bowling's condition from an LPN to, quote, transfer him to a center where the appropriate diagnosis and treatment would be available. And you combine that with Nurse Roscoe's statements that an LPN following the standard of care would have provided that information to Dr. Buffay. The fact that she failed to do that and failed to communicate is that one step in the proximate cause chain here. And this court, as far as I'm aware, there's no holding under Virginia law that each individual defendant be named. There's evidence being put forward. Most of their argument, I believe, comes down to the idea that Nurse Peck was not named specifically by the causation. I think it's being a little bit too fine. It's not just that, is it? I mean, we know here that Dr. Harris did not transfer Bowling based on when Dr. Harris knew about chest pains, knew about blood pressure, and knew about pulse. And so carrying things forward, I mean, those are facts. Well, I actually would push back on that a little bit, Your Honor. Well, I want to hear that, because if I got it wrong, I'm open. I want to hear that. But it would, just for the sake of discussion, it would seem to show that Nurse Peck caused this. You would have to show that Nurse Peck would have provided different information than Nurse Hayes would have. Or that somehow the information, I guess relatedly, the information would have been different an hour and a half earlier when she encountered him. And so it seems like, you know, that's not just, I mean, that's additional. If you accept that Nurse Hayes' information didn't cause Dr. Harris to transfer him, it seems like you've got to show that Nurse Peck would have done something different. Again, Your Honor, I'm going to go back. There's two things on that. One is that while Nurse Hayes didn't come testify, there was a lot of information that came in about what she said through Dr. Harris' own testimony. He testified, attempting essentially to push the blame onto her, which was successful. He testified that she had a lot of information, but it was not adding up. That she told him he may have missed some of his blood pressure pills, maybe taken one more, she wasn't sure what was going on. She provided, potentially the jury could have found, she provided alternative information that he could have ruled that this wasn't that bad. And even when she spoke to him a second time, she said that his chest pain was now minimal. Which experts, you know, from our expert testified that with the leaking blood in his chest, that would not have been true. So the jury could have also found that the actual information Nurse Hayes provided to him was incorrect. And going back to my other argument about the two different experts, Your Honor, is that... I understand, Your Honor. But before you leave that, that's fair. I read that as well. But don't you have an obligation as the plaintiff to present forth evidence of all your claims, an obligation to present some evidence that Nurse Peck would have done something different? Yes, Your Honor, and she would have complied with the standard of care. Again, we're not, we're allowed to say that she would have, so again, she would have not provided him incorrect information. She would have provided an accurate blood pressure. She would have provided his chest pain and where it was. Again, one of the things that's supposed to be done is a physical assessment in terms of where to see the pain was. And Nurse Hayes did not do that, or at least a testimony did not come in that she did anything like that. So you're entitled, you think, to say, based on what Nurse Hayes gave Dr. Harris, he should have transferred the inmate to the ER. And then say that without saying that that was inadequate or that Nurse Peck would have done something different, the jury somehow puts all that together? I have two statements to that. One, again, our statement would be that Nurse Peck would have done something different than Nurse Hayes. No, that's not true. A nurse complying with the standard of care. So again, because Nurse Peck entirely blew him off, all we have is the ability to put in a reasonable LPN, complying with the standard of care, and what would have happened at that point. And again, I think I'd like to point out here that, you know, our evidence at the trial, of course, our theory of the trial is different than what is now. But again, the jury is not required to accept everything the plaintiff argued. The jury is allowed to pick and choose. And the question here is whether there was either any evidence under the appropriate standard. Even if they haven't waived this argument, the question is whether there was some evidence for a reasonable jury to have made this conclusion. And there's nothing unreasonable about the jury, you know, picking a middle ground between the two plaintiff's experts. Maybe the jury believed that had Nurse Peck called at the appropriate time, and then Nurse Hayes had also called later because the doctor had asked for monitoring and provided correct information, he would have sent him then. Maybe the jury found that, you know, maybe they disagreed with Dr. Bethea that he had to go out immediately, but they didn't agree with their expert that waiting until the next day was okay. Maybe they thought that, you know, had an appropriate nurse done a follow-up in three hours and said, yes, he still has lots of pain. As Dr. Harris himself said, if anyone had told him that his condition was still worsening, he would have sent him out. And so I think that the idea here is that, as has been gone through, you know, a lot of the arguments here are changing after the fact, because I think what's happening is that the defense is trying to take a position they wouldn't have made at trial for obvious strategic reasons and are now trying to, you know, take what happened with the verdict and kind of backfill that this would not be possible. And, again, I think that under the standard we have here, it's our position that there is, first of all, that they have waived this argument because as a district court who heard the entire trial, heard the oral arguments, sat through all this, knew what the arguments were, said, this is brand new. And I think that, and then going back to the plain error standard, what we're looking at here is whether there's some evidence that Nurse Peck, there's some evidence for a jury, a fact question, a proximate cause for a jury have been able to find that her death to a reasonable degree, or her negligence to a reasonable degree of medical probability was a proximate cause of Mr. Bowley's death. How many jurors did you have? Was it 12 jury? No, Your Honors, eight, I believe. I believe, it might have been six, I apologize. And how old was the plaintiff? The plaintiff was in his late 40s, Your Honor. Okay. And just going too quickly.  Yes, Your Honor, it was. However, this was a death case, and as the district court put through, he was getting close to getting out. And there was a lot of testimony from his two brothers to which he was extremely close, including the one who is the beneficiary that they were going to live together. The three of them were very close, had a close upbringing together. And again, he was getting out pretty soon and had a chance to kind of restart his life after a long time. How long had he been in prison? Approaching 20 years, Your Honor. 20 years? Yes. So he went in when he was 19 or 20? He was in his early 20s, I believe, Your Honor. I'm sorry I don't have those numbers off the top of my head. No. But he had been in for a pretty serious amount of time, Your Honor. Going to the new trial aspect, I know this wasn't discussed much, but there was... Counsel, I've got one more case. I'm sorry to make sure I'm just trying to understand all these issues. I appreciate your responses. The way you finished a response just a second ago was that this proximate cause is a fact question, that there was some evidence that a reasonable jury could do that. Isn't it true, though, that under Virginia law, it's true it's a factual question, but it requires expert testimony? So it seems to me the question is whether there's any expert testimony that Nurse Peck's negligence caused Dr. Bowley's death. And so I was just making the point that it's not just like a simple negligence case where you can look at circumstantial evidence and stuff like that. It's a medical mal that requires that to be not just any evidence, but admissible expert evidence. Yes, Your Honor. We've already been through why you think that is. I might have one more point. I think the other way of maybe conceptualizing that would be to imagine this case were only against Nurse Peck. If this case were only against Nurse Peck and there was testimony that she should have referred him to a doctor, and a doctor saying in that situation I get that call, he goes to the hospital, and another emergency room physician saying he gets to the hospital, he survives. I think we have no question in that instance that there is an appropriate, or I would believe our position would be that there's no question that there's appropriate expert testimony, even if the third expert or even the second expert don't say the woman's name specifically or whoever the nurse was, that that is enough, that the jury is allowed to. There's no requirement under Virginia law that one causation expert or that one expert complete the entire chain, only that there is expert testimony. And, again, we are not challenging that as a matter of law there needs to be expert testimony to establish causation, except for rare instances which we weren't bringing up. In this instance it is our position that that burden has been met, and that whether there was sufficient evidence to find, like whether that expert testimony was sufficient to find proximate cause is a question for the jury. Once those experts have been certified and do meet the applicable standards under Virginia medical malpractice law, which is not being challenged here, they all do meet that standard. Last question I have. Is there any expert testimony that had Nurse Peck complied with the standard of care, she would have provided different information from Nurse Hayes? Yes, Your Honor. Well, I think it's more in the absence that Nurse Hayes provided additional incorrect information beyond the standard of care. Again, the statement about the blood pressure medication she gave, as Dr. Harris himself said, the information she was given was not adding up. And so I think the point here is that the information she would have given would, we can assume, would have added up. And we can't know exactly what his, I see I'm out of time, may I briefly finish, Your Honor? You may. There's no way we could have known, because she didn't see him, what his blood pressure would have been or what his pulse would have been at that time. But according to our expert testimony and the inference the jury can make, the symptoms would have been roughly similar to what Nurse Hayes saw an hour and a half later. And so, again, we can argue that, you know, had she provided accurate information, you know, and complied with the standard of care in a way that Nurse Hayes didn't, that he would have gotten to the hospital. Or at the very least, had, you know, multiple nurses interacted with him over the day period, that he would have gotten to the hospital. One question to make sure you know your case. I don't. I know it's a record, but you know your case. Is your argument that basically the expert testimony was for a nurse, for the qualifications that she had and her obligations, these are the things that a nurse generically in that position should do, right? One, two, three, four. LPN, yes, Your Honor. Right? And that would be applied to both one PEC and the other nurse as well. Yes, Your Honor. And in this case, there was evidence that, first of all, number one, kind of disavowed, I don't even remember, you know, I'm not even in my case, that kind of thing. So, but we do have what the standard would have been had she done those things. But number two, it called in question whether or not it was accurate what number two gave to the doctor, right? If something ain't correct and those kind of things. So the causation, I guess, not theory, but the evidence is, had nurse number one, had PEC done what she was supposed to do, you had to presume she would have done it correctly. Yes, Your Honor. Yeah, that's the thing. So, yeah, she would have done it correctly. So you don't need another, you have the expert to say what you're supposed to do. See, in question, the jury said you didn't do it. And therefore, by the other one, you can't say, well, it doesn't have to be the final thing, I would have done something different. I would have done it correctly what number two didn't do. I mean, assuming that, right? Are there any questions, Your Honor, about the motion for a new trial before I sit down? No, there are not. All right. Thank you very much, Your Honors. Thank you. Mr. Chancellor? Your Honor, I believe I used my rebuttal time. Oh, no, no. We don't do that in the Fourth Circuit. We still give you your four minutes. Thank you, Your Honor. Thank you. Your Honors, in response to the argument from counsel, I think one important thing to remember, and this is in the record, and this goes to Judge Quattlebaum, your question a few moments ago, is that there is no evidence in the record as to what Nurse Peck would have reported had she seen Mr. Bowley and assessed him or evaluated him. No, the evidence is what she should have done. Correct, correct. And there is a standard by an expert to say what they want. Correct. But under Virginia law, I disagree with the appellee. Under Virginia law, the expert testimony has to look at the procedure at issue, so you have to look at the actual position and what the standard of care was for that position and then link that to the approximate cause, the breach of that standard of care for the nurse approximately causing the death. So, for example, if this were a case involving like a bed-bound patient, the nurse standard of care might be to reposition that patient every 20 minutes or whatever it may be so they don't develop a pressure ulcer. If the patient develops a pressure ulcer, what you then have in a medical negligence case is you have a standard of care expert who says the nurses should have rotated this patient and then you have a physician who says, yes, the failure of the nurses to rotate this patient or reposition this patient caused this pressure ulcer. That's how you link up approximate cause under Virginia law. I'm sorry, Judge Gregg. There is a link. What do you mean? There is a link. You say that if you had clinical findings, you've done what's supposed to, you make those clinical findings, you should have reported correctly those to a physician, write referral. Is that correct? It's not complicated. It's right that the nurse should have done. When you make these clinical findings that we presented with, then it should be clearly a referral to a physician. Is that correct? Can we agree on that? A report to our supervisor. It could be an RN. But, yes, it should be reported up. For the LPN, the LPN position, and this is based on Nurse Roscoe or Dr. Roscoe's testimony, is that the report up is to whoever the supervisor is. So in the medical hierarchy, There's no time to wait for a supervisor. This is life and death. You need to get it to make sure a physician has it, right? That wasn't the testimony from Nurse Roscoe. It was somebody. But Nurse Roscoe, in terms of, is that part of the medical standard in terms of, these are the things you're supposed to do, but I've got to find a supervisor before I do it? Is that what you're saying? Well, under Virginia law, the LPN. Virginia law doesn't say that. I'm a Virginia lawyer. It doesn't say that, that you have to find a supervisor. You can say, well, I know what I'm supposed to do. I have these clinical findings, but now I have to go find a supervisor before I can get it to, this is a life and death situation. A man drowned in his own blood. I think, Judge Gregory, maybe I didn't articulate my response correctly. I was just saying a supervisor could be a physician or an RN. So it's just whoever they're up the chain, they need to report it up the chain, is what the testimony was from the expert on the other side. But your position was, whatever position you took at the trial, maybe none, Judge Peck, that she didn't do anything because she wasn't involved. That was her testimony. She didn't see him. That's correct. So she had no defense about any of those things doing it because it was like all or nothing. You've got to believe that I wasn't involved. The jury obviously didn't believe that. And now you come in and say there's a causation problem that you didn't really raise because it was very difficult because there was a different interest there involved. It was a causation issue that was the plainest burden to establish. And to respond just really quickly, Your Honors. Is it the law that all inferences are drawn in favor of the jury verdict? All reasonable inferences are drawn in favor of the jury verdict? In the light most favorable to the plaintiff, yes. For the prevailing party, yes. But just to point out to Your Honors, the plaintiff's testimony from their expert was that Mr. Boley had a change in circumstance. My time's expired. Go ahead. Finish your thought. Mr. Boley had a change in circumstance from the time that he went to see Ms. Peck to when he was seen by Ms. Hayes. And if you look at Dr. Coondy's testimony at trial, he talks about what sent Mr. Boley to the floor when he laid on the floor and was finally seen by Ms. Hayes was this drop in low blood pressure. And he attributes the significant low blood pressure that Mr. Boley had at that time to why he was laying on the floor. And so for that reason, the jury could only speculate what his condition might have been an hour and a half earlier if that's when he tried to go see Nurse Peck. And so for that reason, there couldn't be sufficient evidence on the proximate cause. And we would ask that the district court's ruling on the Rule 50 motion be reversed. Okay. Thank you both. Thank you. Thank you both. We'll ask the clerk to adjourn the court until tomorrow morning. We'll come down and greet counsel. This honorable court stands adjourned until this afternoon. God save the United States and this honorable court.
judges: Roger L. Gregory, A. Marvin Quattlebaum Jr., Terrence W. Boyle